**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| STACY SELF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>Defendant. ) | 1:17CV1001 |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Stacy Self, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of February 14, 2015. (Tr. 171-72.) Upon denial of that application initially (Tr. 79-93, 106-09) and on reconsideration (Tr. 94-105, 113-18), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 119-20). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-78.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 7-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 169-70, 258-61), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since February 14, 2015, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: functional dystonia, somatic disorder, depression, anxiety, bipolar disorder, obsessive-compulsive disorder (OCD), and obesity.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except she can push/pull as much as she can carry. [Plaintiff] is limited to simple, routine tasks defined as jobs that can be learned in one month or less by an on-the-job demonstration. She can work in a low-stress setting defined as no quota work or production-rate work. She can perform simple, work-related decisions, defined as decisions involving only a few variables. She can have

2

no more than occasional interaction with coworkers and the public. She can have few changes in a routine work setting, defined as only a few deviations from core job duties.

. . .

6. [Plaintiff] is capable of performing past relevant work as housekeeping in a hospital. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

. . .

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from February 14, 2015, through the date of this decision.

(Tr. 12-22 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

## B. Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ failed to adequately include all of [Plaintiff's] limitations in the RFC finding given that the ALJ found [Plaintiff] ha[d] marked impairment in adapting and managing herself." (Docket Entry 15 at 4 (referencing Tr. 14-15).) More specifically, Plaintiff argues that, "[b]y finding that [Plaintiff] had marked limitations in this domain of functioning, [the ALJ] found that [Plaintiff's] ability to adapt and manage herself independently, appropriately, effectively, and on a sustained basis [wa]s *seriously limited*," and that "[t]he limitations the ALJ assigned in her [RFC] finding do not account for more than mild to moderate severity in adapting and managing oneself." (Id. at 6 (emphasis in original).) In that regard, Plaintiff maintains that the ALJ "fail[ed] to include any meaningful limitations in her [RFC] to address [Plaintiff's marked limitation in adapting and managing herself], particularly with regards to time off task and absences due to panic attacks and prostrating depression." (Id. at 7.) According to Plaintiff, "remand is warranted so that [Plaintiff's]

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

limitations in adapting and managing herself can be adequately considered." (Id. at 8.) Those contentions miss the mark.

Effective on January 17, 2017, the Commissioner made substantial revisions to the criteria for evaluating mental disorders in the Listing of Impairments. See https://www.federalregister.gov/documents/2016/09/26/2016-22908/revised-medical-criteria-for-evaluating-mental-disorders (last visited Feb. 19, 2019).[5] As relevant to this case,[6] to meet the paragraph B criteria of revised Listings 12.04 ("Depressive, bipolar, and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), or 12.07 ("Somatic symptom and related disorders"), a claimant must show "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information[;]

2. Interact with others[;]

---

[5] "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

[6] The ALJ apparently assumed, without explicitly finding, that Plaintiff's mental impairments satisfied the paragraph A criteria of Listings 12.04, 12.06, and 12.07 (see Tr. 12-15), and Plaintiff did not raise any arguments directed at the ALJ's findings with respect to the paragraph C criteria (see Docket Entry 15 at 4-8).

9

> 3. Concentrate, persist, or maintain pace[; and]
>
> 4. <u>Adapt or manage oneself</u>.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04B, 12.06B, 12.07B (internal citations omitted) (emphasis added).

In turn, "[a]dapt[ing] or manag[ing] oneself . . . refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." <u>Id.</u>, § 12.00E.4. Examples of abilities falling under this broad area of mental functioning include:

> Responding to demands; adapting to changes; managing [one's] psychologically based symptoms; distinguishing between acceptable and unacceptable work performance, setting realistic goals; making plans for [oneself] independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

<u>Id.</u> The regulation cautions that the above-quoted examples "illustrate the nature of this area of mental functioning," but that a claimant need not provide "documentation of all of the examples." <u>Id.</u>

In this case, the ALJ found that Plaintiff suffered from "marked" limitation in her ability to adapt and manage herself (Tr. 14-15), which means that her "functioning in th[at] area independently, appropriately, effectively, and on a sustained basis [wa]s seriously impaired," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.d. The ALJ supported that finding by noting that Plaintiff's "husband reported that she d[id] not handle stress or

10

changes in routine well due to anxiety and panic attacks," and that Plaintiff "reported that she ha[d] a panic attack three to four times per week and stay[ed] in bed some days due to depression." (Tr. 14-15.)  However, the ALJ additionally found that "the record d[id] not support an 'extreme' limitation in [adapting and managing oneself], as [Plaintiff] reported that she [wa]s able to care for her personal hygiene, complete some housework, help care for pets, and care for her children."  (Tr. 15.)

Notably, Plaintiff does not contend that her mental impairments met or equaled any of the Listings.  (See Docket Entry 15 at 4-8.)  In that regard, Plaintiff neither argues that the ALJ should have found an "extreme," rather than a "marked," limitation in adapting and managing oneself, nor attacks the ALJ's findings with respect to Plaintiff's ability to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace.  (See id.; see also Tr. 14-15).  Rather, Plaintiff asserts that the ALJ "fail[ed] to include any meaningful limitations" in the RFC to address Plaintiff's marked limitation in adapting and managing herself. (Docket Entry 15 at 7.)  However, the ALJ here adequately explained how the mental RFC accounts for Plaintiff's marked limitation in adapting and managing herself.

Most significantly, the ALJ specifically discussed how the mental RFC sufficiently captured Plaintiff's marked deficit in adapting and managing herself:

11

> <u>The combined effects of [Plaintiff's] psychological symptoms on her cognitive functioning and ability to adapt to changes and manage herself are accommodated by limitations to simple, routine, low-stress work with few changes and few decisions</u>. Evidence that her psychological symptoms have improved with medication and counseling, and have not required inpatient or outpatient treatment even during periods without consistent treatment do not support greater limitations in this area.

(Tr. 19 (emphasis added) (citing Tr. 435 (reflecting Plaintiff's report that her depression and anxiety remained "well-controlled"), 504 (documenting physician's opinion that Plaintiff's new anti-depressant "seem[ed] to have worked," that "[s]he [wa]s not crying as much," "[wa]s much more ebullient," "[wa]s much more interactive," and "[wa]s much more pleasant," and that "there [wa]s no question" that "[c]learly [Plaintiff] [wa]s better").) Although Plaintiff contends that "[t]he limitations the ALJ assigned in [the RFC] do not account for more than mild to moderate severity in adapting and managing oneself," Plaintiff cites no authority for that proposition. (Docket Entry 15 at 6.)[7]

---

[7] According to Plaintiff, "[t]he limitations that the ALJ provided in [the] RFC finding [we]re not sufficient to address [Plaintiff's] marked limitations in adapting and managing herself, particularly in light of the fact that the ALJ acknowledged, and did not question the consistency of, [Plaintiff's] reports of multiple panic attacks per week and staying in bed during the day due to depression." (Docket Entry 15 at 6 (referencing Tr. 15).) However, Plaintiff's argument glosses over the fact that the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record" and declared that Plaintiff's "statements have been found to affect [her] ability to work <u>only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence</u>." (Tr. 16 (emphasis added).) Thus, the mere fact that the ALJ acknowledged Plaintiff's testimony regarding the frequency of her panic attacks and the impact of her depression in assigning Plaintiff a marked limitation in adapting and managing herself (<u>see</u> Tr. 14-15)

12

In the face of the ALJ's RFC limitations to "<u>simple, routine, low-stress work with few changes and few decisions</u>" (Tr. 19 (emphasis added)), Plaintiff does not elucidate what further "meaningful limitations" the ALJ should have included in the RFC to accommodate Plaintiff's marked limitation in adapting and managing herself, beyond suggesting that the ALJ should have addressed Plaintiff's "time off task and absences due to panic attacks and prostrating depression" (Docket Entry 15 at 7). However, that argument overlooks the fact that both staying on task and maintaining regular attendance at work constitute mental abilities considered a part of the "[c]oncentrate, persist, or maintain pace" ("CPP") broad area of mental functioning. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.3. Plaintiff here neither challenges the ALJ's finding of only moderate limitation in CPP, nor argues that the ALJ failed to sufficiently account for Plaintiff's moderate deficit in CPP in the RFC. (See Docket Entry 15 at 4-8.)

Under such circumstances, Plaintiff has not shown prejudicial error with respect to the ALJ's RFC determination.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Judgment

---

does not mean that the ALJ <u>fully credited</u> that testimony.

on the Pleadings (Docket Entry 14) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

                                    /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                         **United States Magistrate Judge**

February 21, 2019